RICHARD WILLIAMS AND WIFE v. W. C. MAXWELL, Trustee.

(Decided December 20, 1898.)

## Building and Loan Association—Stockholder— Mortgage.

1. Upon the failure of such association, each stockholder is to be regarded as an incorporator liable for his *pro rata* part of the defalcation and expenses of closing out the concern; until this is ascertained and accounted for, he is not entitled to have the excess paid to him, nor can the amount paid into the association be allowed as a discharge of his indebtedness until this deficiency is paid. *Meares* v. *Butler*, at this term.

2. In foreclosing the mortgage of a borrowing member, all payments made under whatever form should be deducted from the amount borrowed with the addition of 6 per cent. interest and his *pro rata* part of the expense account of the association.

MOTION made in a civil action commenced in Superior Court of Burke County on February 17, 1898, to enjoin the sale of certain lots, under mortgage, in the town of Morganton, the defendant being the trustee in the mortgage, heard before *Starbuck, J.*, upon notice, at CHAMBERS in Marion on March 9, 1898.

At the hearing of a motion for injunction, his Honor, Judge Starbuck, after argument by counsel and a consideration of the case upon the evidence introduced, found the following facts and entered the order of judgment hereinafter set forth, to-wit:

First.   That on or about the 26th day of March, 1890, the plaintiff, R. Williams, became the holder and owner of 10 shares of stock in the North Carolina Building and Loan Association of Charlotte, N. C., a corporation duly organized under the laws of North Carolina for the purpose of conducting a general Building and Loan Association in the State of North Carolina, and they here-

by became shareholders in said corporation, and entitled to share in its benefits and bear their proportion of the losses according to its by-laws and charter.

Second. That on the 26th day of March, 1890, the plaintiffs borrowed from the said association the sum of $1,000, executed in a deed of trust on certain realty located in Burke County, to the defendant, W. C. Maxwell, trustee, for the benefit of the association, as fully appears in said trust deeds, and hypothecated and pledged their said shares of stock as security.

Third. That on the 1st day of February, 1894, the said plaintiff executed to W. C. Maxwell, trustee, for the benefit of the association, another mortgage on the said realty, and hypothecated and pledged said shares of stock. This was done for the purpose of securing an additional loan of $250, to be made by Association to plaintiffs, and the balance due upon the first loan; it being further agreed that plaintiff should receive credit upon the $1,000 for the difference between $750, and the balance due upon the first loan; on October 2, 1894, plaintiffs received the additional $250 loan in cash, and was credited with the difference between the $750, and the balance due upon the first loan, as figured according to the by-laws of the Association, not allowing credits for fines.

Fifth. That the said Association, while running, charged the plaintiffs 8 per cent. interest on the sum borrowed, notwithstanding that they had paid certain amounts from time to time to the reduction of their loan, and also received and applied certain amounts as fines for the non-payment of their dues, according to the by-laws of the Association, to which the plaintiffs had subscribed as shareholders; that while 8 per cent. interest was charged the plaintiff on the full amount

borrowed, as aforesaid, notwithstanding the reduction of the loan by the payment of dues, it was a rule of the Association that upon settlement the plaintiff would be allowed interest on their payments, excepting payments made on fines. It is therefore found that certain amounts, aggregating about $50, paid by plaintiffs, were usuriously received and applied by the Association.

Sixth. That on the 27th day of March, 1897, J. W. Keerans and E. T. Cansler were appointed receivers of said Association by the Superior Court of Mecklenburg County in the case of J. S. Thompson et al. versus The North Carolina Building and Loan Association, for the benefit of all the shareholders and creditors, and are now duly acting as receivers and winding up the affairs of the Association, and collecting its assets; that W. C. Maxwell, the defendant, was made a party to said action by the said court to act in connection with the said receivers in collecting the assets of the Association, and is acting in accordance with the orders of the court and upon the directions of said receivers in accordance with the said orders of the court in collecting the assets of the Association; and the plaintiffs were shareholders in the Association at the time the receivers took charge, March 27, 1897, were the owners of 10 shares of stock and indebted to the Association on their loan.

Seventh. That the said receivers and trustee have figured their account by charging them with the actual sums borrowed, and received from the Association, to-wit: $1,000 on March 26, 1890, and $250 on October 2, 1894, and legal interest thereon according to contract from the dates of same to March 27, 1897; that they have allowed them credit on said loan for all payments that they have made to the Association for any purpose, whether the same had been usuriously or properly

applied by the Association before the appointment of the said receivers, and have allowed them full interest thereon from the dates paid at the same rate charged on their loan, and by the calculations ascertained the indebtedness of the plaintiffs to be on March 27, 1897, the date they took charge as receivers, $676.70, and this the court finds was the true indebtedness of the plaintiffs to the Association on said date, and on which nothing has since been paid; that the said receivers, in the calculation aforesaid, paid no attention to the method of settlement between the plaintiff and the Association on October 2, 1894, as aforesaid, but have simply charged the plaintiffs with the exact amount of money received from the Association, as aforesaid.

Eighth.    That the said receivers sent the plaintiffs a statement of their account, dated September 15, 1897, and included therein the sum of $125, an assessment ordered by the court on September 23, 1897, for their proportionate share of the losses and expenses for winding up said Association; that the said plaintiffs promised to make settlement from time to time, and at no time contended that the statement sent them was wrong, until January 25, 1898, when they advised the said receivers that they differed from same, but without mentioning in what particular, and threatened to bring them into court if they attempted to foreclose the trust deed.

Ninth.    That on account of plaintiffs' refusal to settle their loan as aforesaid, the defendant, Trustee, at the directions of the said receivers, and by the orders of the court in the cause, advertised the property described in the complaint to be sold on the 5th day of March, 1898, in order to pay the amount due the Association.

Tenth.    That on September 23, 1897, the Superior

Court of Mecklenburg County directed the said receivers to figure the accounts between the Association and its shareholders in the manner calculated with plaintiffs, and to deduct from the payments the sum of $12.50 per share for the losses and expenses of winding up the said Association, as will appear by certified copies of the orders and decrees in the exhibits herewith filed.

Eleventh    That the plaintiffs, before the hearing of this cause, tendered the defendant's attorney the sum of $360, in full settlement, which was refused; that the plaintiffs has not paid this sum into Court, nor does he now offer to pay it, or any other sum upon their loan, and that they have never offered to pay any other sum than the $360, as aforesaid.

Twelfth.    It is agreed that the amount loaned by the Association to the plaintiffs, for which the mortgage security was given, was $1,000 on March 26, 1890, and $250 on October 2, 1894, and that the aggregate of all sums paid by the plaintiff to the Association is $931.46, leaving a balance due the Association, without taking into account interest on either side of $318.54; that if plaintiffs be charged with interest on all sums loaned them by the association and credited with interest at the same rate on all sums paid by them, there is left a balance due the Association of $676.70; and if plaintiffs be credited with interest on all sums paid in at 8 per cent. from the dates of same, and be not charged with interest on the loans, there is left a balance of $22.82 in their favor; that if interest be charged on both sides at the same rate, and if there should be deducted from the credits allowed the plaintiffs, the sum of $125 as their proportionate share of the losses and expenses for winding up the Association in accordance with the orders of the court, dated September 23, 1897, the bal-

WILLIAMS v. MAXWELL.

ance in favor of the Association would be the sum of $801.70, due on March 27, 1897, with interest thereon from that date to time of settlement.

Thirteenth.    That the receivers of said Association, in accordance with the orders of the court of Mecklenburg County, have declared and paid two dividends to the non-borrowing shareholders. from funds devised on the loan due by other borrowing members figured in the same way as the plaintiffs, and with the same proportionate sum deducted for losses and expenses.

Fourteenth.    That on the 17th day of February, 1898, the plaintiffs had a summons issued by the Clerk of the Superior Court of Burke County, returnable to the March Term for said county, and the same was shortly thereafter served on the defendant; that on the 19th day of February, 1898, a restraining order was issued by J. D. McIver, Judge of the Seventh Judicial District, and made returnable before H. R. Starbuck, Judge, at Marion, N. C., on Wednesday, March 9, 1898, which said order was also duly served on the said defendant; that before commencing the said action in Burke County, as aforesaid, the plaintiffs did not apply for or obtain any permission from the Superior Court of Mecklenburg County, or to the Judge presiding in said District to sue the defendant in Burke County, nor has he petitioned the court in the cause in Mecklenburg County.

Fifteenth.    That at the October Term, 1897, of the Superior Court of Mecklenburg County, an order was made directing the said receivers of The North Carolina Building and Loan Association to cause an advertisement to be made in the Charlotte Observer, a newspaper published in Mecklenburg County for six successive weeks, and mail a notice of same to all shareholders and creditors of the Association to the effect that they

must present their claims to the said receivers on or before the first day of the January Term of the Superior Court for said county, which convened in Charlotte on January 24, 1898; that at the January Term of said court for Mecklenburg County, an order was made declaring that the said advertisement had been made and notice mailed to all the shareholders and creditors of the Association, in accordance with the orders made at the October Term, 1897, and that all shareholders and creditors who had failed to send in their claims by the first day of said January Term were excluded and debarred from participating in the assets of the said corporation, as will appear by reference to the said orders included in the exhibits in this cause; that a notice of said order was duly mailed to the plaintiffs by the said receivers.

Sixteenth.    That the said plaintiffs did not send in their claim to the said receivers in accordance with the said orders, nor have they in any way petitioned the court in Mecklenburg County in said cause.

It is now, upon consideration of the foregoing facts, adjudged that the motion for an injunction to the final hearing be denied; that the restraining order heretofore issued be dissolved, and that the defendant recover his cost expended in this motion.

H. R. STARBUCK,<br>
Judge Presiding Tenth Judicial District.

To the foregoing judgment plaintiffs except, and appeal.

Messrs. I. T. Avery and A. C. Avery, for appellants.
Messrs. Burwell, Walker & Cansler and Osborne, Maxwell & Keerans, for appellee.

FURCHES, J.:   The "North Carolina Building & Loan Association" is a corporation and its place of business is Charlotte, N. C.   The plaintiff, Richard Williams, became the owner of ten shares of capital stock in said Association of the par value of $100 each, aggregating the sum of $1,000.   This made him a stockholder in the Association (*Strauss* v. *B. & L. Asso.*, 117 N. C., 314) and enabled him to borrow $1,000 from the Association, which he did, and he and his wife executed one of the mortgages mentioned in the complaint, as security therefor.   The plaintiff having reduced the amount of this indebtedness to the Association, was allowed to borrow $250 more, for which he and his wife executed a second mortgage on the same property.   Plaintiff from time to time made payments to the Association until this indebtedness was reduced to $676.70 on the 27th of March, 1897, if these amounts should all be applied to said indebtedness, calculating the indebtedness at 6 per cent. interest and allowing plaintiff credit for all amounts paid by them, and interest thereon at the same rate of per cent.—whether the same was called fines, assessments or what not.

The defendant corporation became insolvent, suit was commenced in the Superior Court of Mecklenburg County to wind up the concern, and on the 27th day of March, 1897, J. W. Keerans and E. T. Cansler were appointed receivers.   The mortgages mentioned above were made to W. C. Maxwell with power to sell upon default.   Maxwell was also a stockholder and member of said corporation, and a party to the action to wind up and settle the concern: and upon the plaintiff's failing to pay said indebtedness, the Court made an order.

123—38

directing said Maxwell, trustee, to sell and to foreclose said mortgages.

To prevent Maxwell's selling under said mortgages, the plaintiff on the 17th day of February, 1898, commenced this action in the Superior Court of Burke County, and obtained a temporary restraining order against said sale. · The plaintiff's motion for injunction was afterwards heard, when the following facts were found and agreed to by the parties:

The plaintiff on the 26th March, 1890, borrowed $1,000 and on the 2nd of October, 1894, borrowed $250; that after allowing plaintiff credit for every dollar paid the defendant Association, whether by way of fines or otherwise, and interest thereon at the rate of 6 per cent. (the same rate defendant had charged plaintiff) the balance remaining due from plaintiff, if the whole amount of these payments should be credited on the indebtedness, left a balance of $676.70. But the Court allowed the receivers to apply $12.50 per share of stock to the loss account, amounting to $125, and if this be deducted from the amount paid into the concern, the amount still due will be $801.70. The injunction being refused, plaintiff appealed.

These are the facts found by the Court and not disputed on the argument here.

Upon this state of facts, there is nothing but questions of law presented, and they have been so frequently and so recently decided by this Court, that we do not feel disposed to discuss them in this opinion.

It was decided in Strauss' case, *supra*, 117 N. C., 314 and 118 N. C., 556, that each holder of stock on the 27th day of March, 1897, the day the receivers were appointed, is an incorporator, and liable for his *pro rata* part of the defalcation and expenses of closing out the concern.

It is held in *Meares* v. *Davis*, 121 N. C., 192, that a corporator is not entitled to have the excess paid to him until his part of the deficiency is ascertained and accounted for.

And it is held in *Meares* v. *Duncan*, and in *Meares* v. *Butler*, at this Term, that, as the incorporators are bound for the defalcation and expenses of winding up the concern, the amounts paid into the Association cannot be allowed as a discharge of their indebtedness until this deficiency is paid. This is held in these cases to be so, even where the rights of married women are involved.

It is held in Strauss' case, *supra*, that the incorporators were liable for their *pro rata* part of this deficiency, according to their *pro rata per cent.* upon the amount of capital they had in the Association on the day it went into the hands of the receiver. And the capital of the borrowing members was the amount they owed the Association at that time.

In this case, it seems that the shares held by each incorporator were assessed $12.50. We do not think this was a compliance with the rule in Strauss' case, and may make some difference in the amount due by the plaintiff. But this is a matter that may be corrected by a mathematical calculation, by taking what the assessments amount to, at $12.50 a share, and get the per cent. this would make upon the whole collectible assets of the concern, and apply this per cent. to the plaintiff's indebtedness.

We are of the opinion that the remaining amount of plaintiff's indebtedness is the amount he borrowed, with 6 per cent. interest, the whole amount the plaintiff has paid the Association, after first deducting the proper per cent. therefrom for defalcations and expenses of closing out the concern.

In the consideration of this case, in order to put it upon its merits, we have left out of consideration the question of *venue*.

We see no good reason why an injunction should issue, and therefore affirm the judgment of the Court below.

Affirmed.