NEW BERN BUILDING AND LOAN ASSOCIATION v.
R. B. BLALOCK AND WIFE.

(Filed 4 December, 1912.)

1. **Building and Loan Companies—Shareholder—Status.**

    A holder of stock in a building and loan association must share in the losses as well as the profits of the concern, and is liable for duly authorized assessments to cover the losses of the corporation.

2. **Same — Borrower — Mortgages — Cancellation — Assessments — Usury.**

    A shareholder in a building and loan association, who has borrowed money from it and secured its payment by a mortgage on real property with his shares of stock as collateral,

with provision both in his certificates and the mortgage for the payment of assessments, may not compel the cancellation of the mortgage upon the repayment of the principal sum and interest, unless he has also paid his assessment to meet a loss of the corporation; and the usury laws have no application.

APPEAL by plaintiff from *Whedbee, J.,* at April Term, 1912, of CRAVEN.

The facts are sufficiently stated in the opinion of the Court by *Mr. Chief Justice Clark.*

*R. A. Nunn* for *plaintiff.*
*Guion & Guion* for *defendants.*

CLARK, C. J. Controversy submitted without action. The defendant R. B. Blalock, on 1 April, 1903, subscribed for $1,500 in the capital stock of plaintiff Building and Loan Association. On 1 June, 1903, he borrowed the sum of $1,500, and as security for said loan assigned said stock as collateral security, and as additional security he and his wife executed a deed in trust on certain realty. In February, 1909, the directors of the plaintiff company discovered that the association had lost a sum of money which would require two additional monthly payments on each share of stock to make good said loss in addition to the eighty-four payments theretofore collected. Assessments for two more months were accordingly directed, amounting to $45 against Blalock. The defendant has paid all his monthly assessments and interest except said assessment of $45, which he refused to pay. The payments made by defendant, if applied solely to his loan, would have been sufficient to pay off said loan, with interest. The other stockholders in said series, including such stockholders as were borrowers, have paid the assessment and interest on their loans for said extra two months and their stock has been matured and paid off. The defendants have demanded of the plaintiff that the bond and the deed of trust be canceled and satisfied on the record. This the plaintiff refused to do until said Blalock shall pay his *pro rata* part of said loss, which the plaintiff claims he is legally required to do.

The court below held that, it appearing upon the case agreed that defendants had paid to the plaintiff association a sum more

than sufficient to pay off the principal and the interest accruing thereon, the deed of trust should be canceled.

It is true that building and loan associations are governed by the usury law, like every one else. *Meroney v. B. and L. Association,* 116 N. C., 882. If the defendant was merely a debtor, the judgment below would be correct; but he is also a corporator, and as such shares in the losses as well as the profits of the undertaking. By the terms of the mortgage itself the realty is bound not merely for the payment of the principal and interest of the debt, but also for the "assessments, installments, dues, and fines upon the stock, which is held as additional security to this loan." The point has often been passed upon by this Court. In *Meares v. Davis,* 121 N. C., 126, the Court held that "A stockholder of an insolvent building and loan association who was also a borrower of its money on mortgage is not entitled to have the excess of the proceeds of the sale of his mortgaged property, over the mortgage debt, paid to him, when his pro rata share of the deficiency in the assets of the concern is equal to such excess." The Court said: "To grant the order asked for would be to relieve the petitioners from the burdens of the defalcations of their insolvent association at the expense of their associate corporators. We cannot discuss this proposition. It has so recently been discussed and decided by this Court that we will only refer to these cases: *Strauss v. B. and L. Association,* 117 N. C., 308; *s. c.,* 118 N. C., 556; *Thompson v. B. and L. Association,* 120 N. C., 420. These cases seem to settle the question raised by the petition, especially the last case cited, where the very question is discussed."

In *Meares v. Duncan,* 123 N. C., 203, it was held: "A married woman who becomes a stockholder in a building and loan association, and also a borrower, must contribute pro rata to the expense and loss account in case of failure, just as she would have participated in the profits if it had been a success." The Court in the opinion said that she could claim no credit on her debt until the expense and deficiency had first been paid. It further said that as the defendant was "one of the corporators and entitled to her part of the profits of the concern, if any had been made, equity says that she must bear her part of the losses

as other stockholders have to do. Were she not so liable, the whole equitable settlement of the concern would be destroyed. She got in the same boat with the other stockholders, and, as it sank, she has to take her chances of escape with the others, though she is a married woman. This is the equitable solution of the matter." In *Meares v. Butler,* 123 N. C., 206, it was held: "Where the husband is a borrower and incorporator of a building and loan association and his wife joins him in a mortgage of her land to secure the debt, while she incurs no personal liability, yet she occupies the relation of surety to the extent of her mortgaged property." The above cases are cited in *Meares v. Improvement Co.,* 126 N. C., 665, the Court saying of a borrowing member: "As he is one of the corporators and liable for his part of the loss, this must be accounted for before he can be credited with the payments that have been made."

The defendant being a corporator, the money he has paid must first be credited in discharge of his pro rata share of the losses of the concern just as, in a contrary event, he would have been credited with his share of the profits, and after payment of such losses the mortgaged property as well as himself is liable for the assessments necessary to mature his stock, and neither the bond nor mortgage should be canceled until the balance due by him of $45 and interest thereon is paid.

The judgment of the court below is therefore

Reversed.